UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ZERO MOTORCYCLES, INC., a Delaware corporation,<br><br>                  Plaintiff,<br><br>      vs.<br><br>PIRELLI TYRE S.P.A. and PIRELLI & C. S.PA.,<br><br>                 Defendants. | Case No:  C 10-01290 SBA<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND AND GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Docket 32, 33 |

Plaintiff Zero Motorcycles, Inc., filed the instant declaratory relief action against Defendants Pirelli & C.S.p.A. and Pirelli Tyre S.p.A. (collectively "Defendants") seeking a declaration that its use of the ZERO mark and ZERO-formative marks does not infringe Defendants' ZERO and ZERO-formative registered trademarks.  The parties are presently before the Court on: (1) Plaintiff's Motion for Leave to File Amended Complaint, Dkt. 33; and (2) Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Dkt. 32.  Having read and considered the papers filed in connection with this matter and being fully informed, the Court hereby DENIES Plaintiff's motion for leave to amend and GRANTS Defendants' motion to dismiss.  The Court, in its discretion, finds this matter suitable for resolution without oral argument.  See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

## I.   **BACKGROUND**

### A.   FACTUAL SUMMARY

Plaintiff is a manufacturer of electric motorcycles, which it markets and sells in "many foreign countries" under the ZERO MOTORCYCLES mark—a mark which it has used since 2007.  Compl. ¶¶ 8-9, 12.  Plaintiff owns United States trademark registrations for ZERO for use on electric vehicles, namely motorcycles, and ZERO-formative marks consisting of ZERO MOTORCYCLES, ZERO DS, ZERO S, ZERO SS, ZERO X and ZERO MX.  Id. ¶ 13.  Defendants Pirelli & C.S.p.A. ("Pirelli & C.") and Pirelli Tyre S.p.A. ("Pirelli Tyre") allegedly manufacture and sell various products, including tires for vehicles, and own a number of trademarks which incorporate the ZERO mark.  Id. ¶¶ 17-18.

Defendant Pirelli & C. is the parent entity and 100% owner of Defendant Pirelli Tyre.  Giannesi Decl. ¶ 3, Dkt. 32-1.  Both entities are organized under Italian law as a società per azioni, a type of Italian corporate body, and have their principal places of business in Milan, Italy.  Id. ¶¶ 6, 12.  Neither maintains any presence in California nor conducts any business in the state.  Id. ¶¶ 7-17.  Though Pirelli & C. does not directly transact business in California, it indirectly owns subsidiaries which do, including Pirelli Tire LLC.  Rosenzweig Decl. ¶ 4, Dkt. 49-2.  Specifically, at the time the Complaint was filed, Pirelli Tire LLC was owned by Pirelli North America, Inc. ("Pirelli North America"), which, in turn, was owned by Pirelli Tyre Holland N.V., which, in turn, was owned by Pirelli Tyre, which, as noted, was owned by Pirelli & C.  Id.[1]

According to Plaintiff, "[i]n March 2009, Defendants began a global campaign against Plaintiff's trademark applications by commencing a series of opposition and cancellation filings against Plaintiff's marks in the [United States Patent and Trademark Office ("PTO")], European Union and Switzerland."  Id. ¶ 21.  In particular, Plaintiff avers

---

[1] Defendants indicate that as of June 1, 2010, Pirelli North America became owned by Pirelli Tyre, which remains owned by Pirelli & C.  Second Rosenweig Decl. ¶ 4, Dkt. 49-2.

that on June 10, 2009, Defendants submitted a Combined Declaration of Use and Incontestability to the PTO to ensure that their ZERO mark remained on the PTO's Principal Register.  Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 3, Dkt. 36.[2] The declaration claimed that the ZERO mark was in use in the United States, and attached an exemplar consisting of marketing material showing a tire with the P ZERO mark.  Id.; Rodebaugh Decl. Ex. 1, Dkt. 37-1.  Plaintiff claims that the representation of use was false ostensibly because the exemplar was for the P ZERO mark, as opposed to the ZERO mark.

Plaintiff also points to a Notice of Opposition filed by Defendants in the PTO on September 29, 2009, in response to Plaintiff's trademark applications.  Defendants' opposition claimed that Plaintiff's use of ZERO-formative marks would "be likely to cause confusion, or to cause mistake, or to deceive in violation of Section 2(d), 15 U.S.C. § 1052(d)."  Id. Ex. 3 ¶ 19.  Similarly, on December 16, 2009, Defendants filed a Petition for Cancellation before the PTO, which again claimed that Plaintiff's use of ZERO-formative marks was likely to cause confusion.  Id. Ex. 4 ¶ 15, Dkt. 37-2.  Plaintiff alleges that Defendants' submissions to the PTO are part of a campaign of harassment to prevent it from using ZERO or ZERO-formative marks.

**B.    PROCEDURAL HISTORY**

On March 26, 2010, Plaintiff filed the instant action in this Court seeking declaratory and injunctive relief.  Plaintiff alleges that a justiciable controversy has arisen regarding Plaintiff's use of the ZERO mark and ZERO-formative marks by virtue of Defendants' actions before the PTO and their corresponding refusal to discuss settlement. The Complaint alleges four claims for relief, as follows:  (1) a declaration of non-trademark infringement; (2) a declaration of no unfair competition; (3) cancellation of United States Trademark Registration No. 2749340; and (4) a permanent injunction to enjoin Defendants

---

[2] Under 15 U.S.C. § 1058, a previously-registered mark is subject to cancellation in ten years unless the registrant files an affidavit with the PTO showing that mark is still in use.  It was in connection with this requirement that Defendants submitted the affidavits referenced by Plaintiff.  See Carron Decl. Ex. 5, Dkt. 50-1.

from further prosecuting their cancellation and opposition proceedings in the PTO, and anywhere in the world.

In response to the Complaint, Defendants filed a motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2).  The crux of Defendants' motion is that Defendants are Italian entities over which the Court lacks general or specific jurisdiction.  Pursuant to the stipulation of the parties, the Court subsequently granted Plaintiff leave to conduct jurisdictional discovery and denied Defendants' motion to dismiss without prejudice.  Dkt. 25.  After Plaintiff conducted its jurisdictional discovery, Defendants renewed their motion to dismiss.  Dkt. 32.

Two days after Defendants filed their renewed motion to dismiss, Plaintiff separately filed a motion for leave to file an amended complaint.  Dkt. 33.  Plaintiff seeks to join Pirelli North America and Pirelli Tire LLC, both of which are United States subsidiaries of Defendants, as party-defendants.  In addition, Plaintiff requests leave to include three additional claims for:  (1) disparagement under the Lanham Act § 43(a); (2) unfair competition under California Business & Professions Code § 17200; and (3) trade libel under California law.  See Pl.'s Proposed First Am. Compl. ("FAC") (Ex. A to Pl.'s Mot. for Leave to Amend).  Defendants oppose Plaintiff's motion on the ground that the proposed amendments are futile and that there is no basis for joining Pirelli North America and Pirelli Tire LLC in this action.  Dkt. 54.  Defendants also claim that Plaintiff has unduly delayed in seeking leave to amend.

## II.    PLAINTIFF'S MOTION FOR LEAVE TO AMEND

### A.    LEGAL STANDARD

Rule 15(a)(2) provides that leave to amend a complaint should be "freely given when justice so requires."  Fed. R. Civ. P. 15(a)(2); Moss v. United States Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).  Rule 15 "is to be applied with extreme liberality." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003).  "Four factors are commonly used to determine the propriety of a motion for leave to amend. These are:  bad faith, undue delay, prejudice to the opposing party, and futility of

amendment." <u>Ditto v. McCurdy</u>, 510 F.3d 1070, 1079 (9th Cir. 2007) (citations and internal quotation marks omitted).   The party opposing the amendment carries the burden of showing why leave to amend should not be granted.  <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 187 (9th Cir. 1987).  The decision to grant or deny a request for leave to amend rests in the discretion of the trial court.  <u>See</u> <u>California v. Neville Chem. Co.</u>, 358 F.3d 661, 673 (9th Cir. 2004).

Defendants oppose Plaintiff's motion on the ground that the joinder of new claims and parties is futile.  Leave to amend under Rule 15(a) "need not be granted when the proposed amendment is futile."  <u>Nordyke v. King</u>, -- F.3d --, 2011 WL 1632063, at *8 n.12 (9th Cir. May 2, 2011).  "A proposed amended complaint is futile if it would be immediately subject to dismissal."  <u>Id.</u> (internal quotation marks omitted).  The test for assessing futility is "identical" to the test applied on a Rule 12(b)(6) motion.  <u>Id.</u>  Thus, in assessing the allegations of a proposed pleading, the Court "accept[s] as true all well-pleaded allegations of material fact, and construe[s] them in the light most favorable to the non-moving party."  <u>Daniels-Hall v. National Educ. Ass'n</u>, 629 F.3d 992, 998 (9th Cir. 2010).  The facts alleged must be sufficient to push the claims "across the line from conceivable to plausible[.]"  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 557 (2007)).  In addition, the allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests."  <u>Id.</u> at 555 (internal quotations and citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

**B.   PROPOSED CLAIMS**

**1.   Disparagement under the Lanham Act**

Plaintiff first proposes joining a claim for disparagement under the Lanham Act.  The Lanham Act allows for product disparagement claims in cases in which there is a "misrepresentation of 'the nature, characteristics, qualities, or geographic origin' of 'another person's goods, services, or commercial activities.'"  <u>Id.</u> at 903 (quoting 15 U.S.C. § 1125(a)(1)(B)).  To state a claim for product disparagement, the plaintiff must allege

that: (1) that the defendant made a *false or misleading statement of fact in commercial advertising or promotion about the plaintiff's goods or services*; (2) that the statement actually deceives or is likely to deceive a substantial segment of the intended audience; (3) that the deception is material in that it is likely to influence purchasing decisions; (4) that the defendant caused the statement; and (5) that the statement results in actual or probable injury to the plaintiff.  See Zenith Elects. Corp. v. Exzec, Inc., 182 F.3d 1340, 1348 (Fed. Cir. 1999); see also Southerland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139 (9th Cir. 1997) (reciting same elements for a Lanham Act false advertising claim).[3]

The facts alleged in Plaintiff's proposed amended complaint fail to state a plausible claim for product disparagement under the Lanham Act.  Plaintiff predicates its proposed claim on "two public, false assertions of fact that disparage [Plaintiff] and its products and marks:  1) Pirelli has sworn that it has used a ZERO mark in US [sic] commerce, identical to Plaintiff's ZERO mark; and 2) Pirelli has sworn that [Plaintiff] is confusing relevant consumers and diluting Pirelli's allegedly famous ZERO-formative marks…."  See Pl.'s Reply at 9, Dkt. 56.  These allegations fail to state a claim for product disparagement because the alleged misstatements were made to the PTO, and not in the course of commercial advertising or promotion.  In addition, the alleged misstatements pertain to Plaintiff's marks, not its goods or services.  See Freecycle Network, 505 F.3d at 904. Accordingly, Plaintiff's claim for product disparagement under the Lanham Act is futile, since it "would be immediately subject to dismissal."  Nordyke, 2011 WL 1632063, at *8 n.12.

## 2. Unfair Competition Law

Next, Plaintiff seeks to add a claim for violation of California's Unfair Competition Law ("UCL"), which makes actionable any "unlawful, unfair or fraudulent business act or

---

[3] It is not entirely clear from the proposed amended complaint whether Plaintiff is attempting to allege that Defendants disparaged Plaintiff's *products* or its *marks*—or both. See FAC ¶¶ 65, 68.  To the extent that Plaintiff is purporting to state a claim for *trademark* disparagement, the Ninth Circuit has held that "no such claim exists under the Lanham Act."  Freecycle Network, Inc. v. Oey, 505 F.3d 898, 904 (9th Cir. 2007).  Therefore, the Court considers whether Plaintiff has stated a claim for product disparagement.

practice." Cal. Bus. & Prof. Code § 17200; <u>see</u> <u>Birdsong v. Apple, Inc.</u>, 590 F.3d 955, 959 (9th Cir. 2009) ("Each prong of the UCL is a separate and distinct theory of liability."). In its proposed claim under the UCL, however, Plaintiff does not specifically identify the conduct that allegedly violates the UCL. Instead, Plaintiff merely incorporates "paragraphs 1-71 of this Complaint," and asserts that the facts alleged therein constitute "unlawful, unfair and/or fraudulent activities under Cal. Bus. and Prof. Code § 17200 and/or common law." FAC ¶¶ 72-73. This Court has previously found that this type of vague, broad and conclusory pleading is insufficient to state a claim for relief. <u>See</u> <u>Rashdan v. Geissberger</u>, No. C 10-00634 SBA, 2011 WL 197957, at *10 (N.D. Cal. Jan. 14, 2011) ("Incorporating the preceding 188 paragraphs of the Complaint fails to provide Defendants with 'fair notice' of the basis of Plaintiff's []claim."). Nevertheless, the allegations set forth in paragraphs one through seventy-one of the proposed amended complaint are insufficient to state a claim under any of the three prongs of the UCL.

a)    <u>Unlawful</u>

"[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 *et seq.* and subject to the distinct remedies provided thereunder." <u>Farmers Ins. Exch. v. Super. Court</u>, 2 Cal.4th 377, 383 (1992) (quotations and citations omitted); <u>Chabner v. United Omaha Life Ins. Co.</u>, 225 F.3d 1042, 1048 (9th Cir. 2000). "[A] UCL claim of any kind "must identify the particular section of the statute that was violated, and must describe with reasonable particularity the facts supporting the violation." <u>Baba v. Hewlett-Packard Co.</u>, No. C 09-05946 RS, 2010 WL 2486353, at *6 (N.D. Cal. June 16, 2010).

In his proposed amended complaint, Plaintiff fails to cite any particular statute or allege any particular facts demonstrating that Defendants engaged in unlawful activity. Nonetheless, in its reply brief, Plaintiff attempts to clarify that Defendants' statements to the PTO amount to violations of the Lanham Act and constitute perjury under federal law. Pl.'s Reply at 12. Setting aside that Plaintiff's argument is improperly presented for the

first time in its reply, see Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007), in neither the proposed pleading nor its reply does Plaintiff specifically identify the provision of the Lanham Act that Defendants allegedly violated.  The absence of such allegations is fatal to a claim brought under the unlawful prong of the UCL.  See Baba, 2010 WL 2486353, at *6.

Nor does Plaintiff allege facts showing a "willful intent to provide false testimony," which is required to sustain a claim for perjury.  See United States v. Armstrong, 620 F.3d 1172, 1176 (9th Cir. 2010).  Plaintiff avers that Defendants lied to the PTO about the ZERO mark being used in commerce ostensibly because the exemplar attached to Defendants' Combined Declaration of Use and Incontestability consisted of a print advertisement for a tire using the P ZERO mark, as opposed to the ZERO mark. Rodenbaugh Decl. Ex. 1.  However, the fact that Defendants submitted the allegedly false statement *with the exemplar* undermines any assertion of a willful intent to deceive the PTO, since the PTO obviously could assess the accuracy of Defendants' representation by comparing it to the exemplar.  Stated another way, if Defendants' intent were to deceive the PTO, it would be illogical for them to have attached an exemplar which ostensibly contradicts their representation.  As for Defendants' other statement regarding the likelihood of customer confusion, such statement was not presented under penalty of perjury.  Rather, that allegation was made by Defendants' attorneys in a pleading submitted to the PTO.  Id. Ex. 3 ¶ 9.  In sum, the Court finds that Plaintiff has failed to allege a plausible claim for engaging in an unlawful business practice under the UCL.

b)   Unfair

An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers."  McDonald v. Coldwell Banker, 543 F.3d 498, 506 (9th Cir. 2008); Glenn K. Jackson Inc. v. Roe, 273 F.3d 1192, 1203 (9th Cir. 2001).  Such a claim requires a plaintiff to "tether" its allegation of unfair competition to a constitutional or statutory provision or regulation carrying out such a statutory policy.  See Ferrington v. McAfee, Inc., No. C 10-1455 LHK, 2010 WL 3910169, at *11-13 (N.D. Cal. Oct. 5, 2010) (citing

Lozano v. AT & T Wireless Servs., 504 F.3d 718 (9th Cir. 2007)); see also Cel-Tech Comms. v. L.A. Cellular Tel. Co., 20 Cal.4th 163, 185 (1999) (tethering test applies in actions brought by a business competitor challenging anti-competitive practices).

Though not entirely clear from the proposed pleading, Plaintiff appears to allege that Defendants acted "unfairly" by engaging in a concerted effort before the PTO and other fora to challenge Plaintiff's use of the ZERO mark.  See, e.g., FAC ¶¶ 40-44.  However, there are no allegations that tether such claim to any constitutional, statutory or regulatory provision.  To the contrary, it is clear from the allegations presented that Defendants did little more that seek to protect its intellectual property rights with respect to its use of the ZERO mark.  Tellingly, Plaintiff has failed to cite to any decisional authority holding that liability under the UCL may be predicated upon such conduct.[4]  The Court therefore finds no legal or factual basis for Plaintiff's proposed claim for violation of the unfair prong of the UCL.

c)    <u>Fraudulent</u>

Conduct is considered "fraudulent" under the UCL if the conduct is "likely to deceive."  Morgan v. AT & T Wireless Servs., Inc., 177 Cal.App.4th 1235, 1254 (2009).  Although a UCL claim need not plead the elements of common law fraudulent deception, it must allege the existence of a duty to disclose, Berryman v. Merit Prop. Mgmt., Inc., 152 Cal.App.4th 1544, 1557 (2007), as well as reliance, In re Tobacco II Cases, 46 Cal.4th 298, 328 (2009).  In addition, the fraudulent conduct must be alleged with particularity under Rule 9(b).  See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009) ("we have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.").  In the instant action, Plaintiff's proposed UCL claim

---

[4] In its reply, Plaintiff cites to several district court decisions emanating from outside the Ninth Circuit for the proposition that groundless legal and administrative actions may constitute unfair competition.  Pl.'s Reply at 13.  The allegations of the proposed pleading fail to demonstrate that Defendants undertook frivolous or malicious legal action.  In addition, because none of those cases involved a claim under California's UCL or involved circumstances analogous to those at issue, none of those cases is germane to the matter before the Court.

1    fails to allege any facts demonstrating that the public was deceived, that Defendants

2    violated any duty to disclose, or that any person relied on Defendants' alleged

3    misrepresentations.  Plaintiff's wholly vague assertions of fraudulent conduct are

4    insufficient to establish a plausible claim.  See Twombly, 550 U.S. at 557.

5                **3.   Trade Libel**

6         Plaintiff' third and final proposed claim is for trade libel.  In California, a

7    disparaging statement about a competitor's product that causes the competitor to suffer

8    pecuniary damages is actionable as trade libel.  See Microtec Research, Inc. v. Nationwide

9    Mut. Ins. Co., 40 F.3d 968, 972-73 (9th Cir. 1994).  To state a claim for trade libel, a

10   plaintiff must allege facts demonstrating a "(1) publication, (2) which induces others not to

11   deal with plaintiff, and (3) special damages."  Aetna Cas. and Sur. Co., Inc. v. Centennial

12   Ins. Co., 838 F.2d 346, 351 (9th Cir. 1998).  To properly allege damages, the pleader must

13   specifically identify the customers or transactions lost as a result of the disparagement; a

14   general decline in business will not suffice.  See Passport Health, Inc. v. Travel Med, Inc.,

15   No. 2:09-cv-01753-GEB-JFM, 2009 WL 3824743, at *5 (E.D. Cal. Nov. 16, 2009).

16        Plaintiff has failed to allege sufficient facts to sustain a claim for trade libel.  First,

17   Plaintiff has failed to allege any false or disparaging statements regarding Plaintiff's

18   property.  Instead, Plaintiff has simply alleged that Defendants made false statements to the

19   PTO regarding the similarity of their respective marks.  Such a statement does not impugn

20   the quality or character of Plaintiff's motorcycles or any of its other products.  There also

21   are no facts alleged that Defendants' statements caused others not to "deal with" Plaintiff.

22   Lastly, Plaintiff has failed to identify any particular customers or transactions lost as a

23   result of Defendants' conduct.  In short, Plaintiff has failed to allege sufficient facts to state

24   a plausible claim for trade libel.  The Court therefore denies Plaintiff's request for leave to

25   amend to add a claim for trade libel.

26        **C.   PROPOSED PARTIES**

27        Finally, Plaintiff seeks to join United States subsidiaries, Pirelli Tire LLC and its

28   parent entity, Pirelli North America, as party-defendants in this action.  Without citing any

legal authority or providing any reasoned analysis, Plaintiff summarily asserts that these subsidiaries should be joined because they "conspired and acted in concert with Defendants to obstruct Plaintiff's attempts to register and secure its trademark rights."  Pl.'s Mot. at 4. Yet, the proposed amended complaint is devoid of any factual allegations which support such a claim.  Nor are there any allegations that either had any involvement with Defendants' filings with the PTO which form the basis of Plaintiff's claims.  Because Plaintiff has failed to aver any factual or legal basis for joining Pirelli Tire LLC and Pirelli North America, the Court denies Plaintiff's request to join them as parties to this action.

### D.    CONCLUSION

The Court finds that the joinder of additional claims and parties in this action is not warranted.  Plaintiff's proposed claims for disparagement under the Lanham Act, unfair competition and trade libel lack merit, and Plaintiff has failed to articulate any cognizable claims against Pirelli Tire LLC and Pirelli North America.  In addition, the Court is persuaded by Defendants' contention that Plaintiff has engaged in undue delay.  The "facts" underlying Plaintiff's proposed claims were available to Plaintiff when it initiated this lawsuit in 2010.  Yet, Plaintiff fails to explain why it waited until over a year after filing suit to seek the joinder of these claims and parties.  Thus, the Court, in its discretion, denies Plaintiff's motion for leave to amend on the grounds of futility and undue delay.   The Court now turns to Defendants' motion to dismiss for lack of personal jurisdiction.

//

//

//

//

//

## III. DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A. LEGAL STANDARD

District courts have the authority to dismiss an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where, as here, the existence of personal jurisdiction is challenged and the defendant appears specially to contest its presence in the jurisdiction, the plaintiff has the burden to come forward with some evidence to establish jurisdiction." Dist. Council No. 16 of Int'l Union of Painters & Allied Trades v. B & B Glass, Inc., 510 F.3d 851, 855 (9th Cir. 2007). "The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues." See Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). "When a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Id. (citing Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir. 1995)). The Court accepts as true any uncontroverted allegations in the complaint and resolves any conflicts between the facts contained in the parties' evidence in the plaintiff's favor. Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002). However, for personal jurisdiction purposes, a court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." Alexander v. Circus Circus Enters., Inc., 972 F.2d 261, 262 (9th Cir. 1992) (internal quotations omitted).

Personal jurisdiction over a nonresident defendant is analyzed under a two-part test. Chan v. Soc'y Expeditions, Inc., 39 F.3d 1398, 1404 (9th Cir. 1994). First, the exercise of jurisdiction must satisfy the requirements of the applicable state long-arm statute. Id. Second, the exercise of jurisdiction must comport with federal due process. Id. at 1404-05. Because California's long-arm statute, Cal. Civ. Proc. Code § 410.10, extends jurisdiction to the limit of federal due process, the Court need only analyze the second part of the test. See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1123 (9th Cir. 2002).

Due process requires that a defendant have sufficient "minimum contacts" with the forum state.  Int'l Shoe Corp. v. Washington, 326 U.S. 310, 316 (1945); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).  The minimum contacts must be such that a defendant "should reasonably anticipate being haled into court" in the forum state.  World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).  Under a minimum contacts analysis, jurisdiction may either be "general" or "specific."  Doe, 248 F.3d at 923.  General jurisdiction depends on the defendant's "substantial, continuous and systematic" contacts with the forum, "even if the suit concerns matter not arising out of his contacts with the forum."  Glencore, 284 F.3d at 1123.  Specific jurisdiction exists "where the cause of action arises out of or has a substantial connection to the defendant's contacts with the forum."  Id.  Here, Plaintiff claims that the Court has both general and specific personal jurisdiction over Defendants.

**B.  GENERAL JURISDICTION**

**1.  Continuous and Systematic Contacts**

General jurisdiction exists when a defendant maintains "continuous and systematic" contacts with the forum state, even if the cause of action has no relation to those contacts.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984).  The standard for establishing general jurisdiction is high, and requires that a defendant's contacts be the "kind of activity that *approximates physical presence* within the state's borders."  Bancroft & Masters v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000) (emphasis added).  The requisite showing of personal jurisdiction is *heightened* where, as here, the defendants are foreign domiciles.  Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993)  ("litigation against an alien defendant requires a higher jurisdictional barrier than litigation against a citizen from a sister state."); see also Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 115 (1987) ("[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction into the international field.").

In the instant case, Plaintiff claims that Defendants' continuous and systematic contacts are shown by:  (1) a joint venture in 2000 with Cisco Systems Corporation and

various divisions of Pirelli & C.; (2) investments in two California companies in 2008 and 2009; (3) investments in three California-based retirement funds in 2006; (4) the ownership of a motorcycle tire distributorship in Santa Ana, California; (5) the sponsorship of research at the University of California, Berkeley, in 2009; (6) entering into confidentiality agreements with two California entities; (7) corporate sponsorships of automobile races held in California; and (8) taking pictures in California for a promotional calendar in California. See Pl.'s Opp'n at 5.[5]  Even if each of these assertions were true, they are insufficient to establish general jurisdiction over Defendants.

In Goodyear Dunlop Tires Operations, S.A. v. Brown, -- S.Ct. --, 2011 WL 2518815 (June 27, 2011) ("Goodyear"), the Supreme Court reaffirmed that its decision in Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952) continues to serve as the benchmark for determining whether a court may assert general jurisdiction over a foreign corporation.  In Perkins, the plaintiff sued a Philippine corporation in an Ohio court to recover payment of stock dividends and for damages based on its failure to issue stock certificates.  The defendant was a mining company which had ceased operations in the Philippines during World War II.  During the war and after, the defendant continued its operations in Ohio, where the corporation's president maintained his office, the company maintained its files, and from which it supervised its "necessarily limited wartime activities of the company." Perkins, 342 U.S. at 447-448.  Although the claims against the defendant did not arise in Ohio, the Court held that it would not violate due process for an Ohio court to adjudicate the controversy since the defendant was, for all intents and purposes, operating its business from Ohio.  Id.

In the instant case, the Court finds that Defendants' contacts with this forum are too tenuous to support a finding of general jurisdiction.  Unlike the defendant in Perkins, Defendants maintain no physical presence in California nor is there any showing that they

---

[5] As Defendants correctly point out, most of these alleged contacts are unsubstantiated.  Nevertheless, as will be discussed, these types of contacts, even if proven, are insufficient to establish general jurisdiction.

conducted their business operations here.  The examples of Defendants' alleged forum-related contacts are, at best, too isolated and sporadic to constitute the type of continuous and systematic contacts that "approximates physical presence."  Bancroft, 223 F.3d at 1086.  Thus, based on the record presented, the Court finds that it lacks general jurisdiction over Defendants.  See Helicopteros, 466 U.S. at 416-17 (holding that a Texas court lacked jurisdiction over a defendant which did not have a place of business in and never had a license to do business in Texas, and where its contacts consisted of sending personnel to the state for business-related matters and making in-state purchases of equipment and services).

### 2.    Alter Ego/Agency Theory

As an alternative matter, Plaintiff contends that the Court has personal jurisdiction over Defendants based on their ownership of subsidiaries based in the United States.  There are two tests to determine whether the contacts of a subsidiary with the forum state may be imputed to a foreign parent—the "alter ego" test and the "agency" test.  Bauman v. DaimlerChrysler Corp., -- F.3d --, 2011 WL 1879210, at *8 (9th Cir. May 18, 2011).  The "alter ego" test requires:  "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice."  Id. (internal quotations and citation omitted).  To satisfy the agency test, there must be "a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services."  Id. (internal quotations and citation omitted).

Plaintiff asserts both alter ego and agency theories, but does not actually distinguish between them.  Pl.'s Opp'n at 12.  Instead, Plaintiff merely presents a number of arguments for treating Defendants and their United States subsidiaries as one in the same for purposes of personal jurisdiction.  First, Plaintiff argues that Pirelli & C. is a "holding company" which manages a variety of divisions, including three United States subsidiaries, Pirelli Communications and Cables and Systems USA, LLC, Pirelli Power Cables and Systems

USA, LLC, and Pirelli Tire USA LLC.  Pl.'s Opp'n at 5, Rodenbaugh Decl. Ex. 6.  Plaintiff asserts that Pirelli & C. "assures the public that it has total control over the subsidiaries' operations and finances, including specifically the 'significantly important' Pirelli Tire LLC," and that without Pirelli Tire LLC, Defendants would be unable to conduct business in California.  Pl.'s Opp'n at 13-14.  However, Plaintiff fails to support its conclusory assertions with any specific facts or evidence.  In contrast, Defendants presents evidence that Pirelli Tire LLC is a Delaware limited liability company that manages its own internal affairs, finances and operations apart from Defendants.  Second Rosenzweig Decl. ¶ 13, Dkt. 49-2.

Next, Plaintiff alleges that a unity of interest exists between Defendants and Pirelli Tire LLC based on a license agreement which allows the latter to use the "Pirelli" mark in connection with the sale of tires in the United States.  The existence of such an agreement proves little.  "The mere identity of corporate logos, without more does not establish that one company dominated another's business activities or acted as its alter-ego."  Patterson v. Home Depot, USA, Inc., 684 F. Supp. 2d 1170, 1179 (D. Ariz. 2010).  That aside, the licensing agreement is, by all accounts, an arms-length agreement pursuant to which Pirelli Tire LLC pays a royalty for the use of the mark and requires it to report on the quantity and quality of its use.  These terms actually show that Defendants and Pirelli Tire LLC were "dealing with each other as separate and independent entities dealing at arm's length," which undermines any claim that a unity of interest existed between them.  Id. (internal quotations and citations omitted).

Plaintiff also contends that Defendants and Pirelli Tire LLC share at least one board member and that senior level executives "shuttle" back and forth between the companies.  Pl.'s Opp'n at 15.  However, the mere fact that a parent and subsidiary share board members, standing alone, "is not enough to meet the alter ego or agency tests."  Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd., 328 F.3d 1122, 1135 (9th Cir. 2003) (finding that the *complete identity* of board members and senior executives between parent and subsidiary was *insufficient* to establish an alter ego relationship).  In this case,

the connection is particularly attenuated given that they share only one of twenty members on the board of Defendant Pirelli & C.  <u>See</u> Rodenbaugh Decl. Ex. 5 (Bates No. P000142). As to the alleged sharing of senior executives, such claim is factually unsupported and is otherwise legally uncompelling.  <u>See</u> <u>Harris Rutsky</u>, 328 F.3d at 1135.

Plaintiff's contentions that the Defendants' subsidiaries are undercapitalized and that they share legal counsel are likewise unavailing.  Plaintiff fails to provide any support for its assertion that Defendants' subsidiaries "are each capitalized at just one U.S. dollar." Pl.'s Opp'n at 15.  As for the claim that Defendants and Pirelli Tire LLC share legal counsel, the record merely shows that, *in this particular case*, Defendants' counsel indicated that they would be willing to accept and respond to a document request directed to Pirelli North America on the condition that Plaintiff agree that such acceptance did not constitute a waiver of service generally.  Carron Decl. ¶¶ 4-5, Dkt. 50.  Plaintiff never responded to counsel's offer, and thus, the document requests were never accepted.  <u>Id.</u> ¶ 6. In any event, it is entirely illogical to conclude—as Plaintiff now urges—that defense counsel's conditional offer demonstrates that Defendants and its subsidiaries always share the same counsel, let alone that Defendants exercise control over its subsidiaries so as to render them a mere instrumentality of Defendants.

The Court concludes that Plaintiff has failed to show that Pirelli Tire LLC or any of Defendants other United States subsidiaries is the alter ego or agent of Defendants, such that its contacts with the forum may be imputed to them.

## C.   SPECIFIC JURISDICTION

Plaintiff also contends that the Court has specific jurisdiction over Defendants.  The Ninth Circuit applies a three-prong test for analyzing claims of specific jurisdiction:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice.

1  Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987).  "If the plaintiff succeeds in satisfying

2  both of the first two prongs, the burden then shifts to the defendant to 'present a compelling

3  case' that the exercise of jurisdiction would not be reasonable."  Schwarzenegger v. Fred

4  Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting in part Burger King, 471

5  U.S. at 476-78).

### 1.   Purposeful Direction

7  The "purposeful direction" test applies to tort claims.  Brayton Purcell LLP v.

8  Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010).  This test, which derives from

9  Calder v. Jones, 465 U.S. 783 (1984), "requires that the defendant allegedly have

10  (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm

11  that the defendant knows is likely to be suffered in the forum state."  Dole, 303 F.3d at

12  1111.  The mere fact that "a foreign act" has a foreseeable effect in the forum state

13  generally is insufficient to give rise to specific jurisdiction.  Bancroft, 223 F.3d at 1087.  To

14  meet the express aiming requirement, plaintiff must proffer "evidence of the defendant's

15  actions outside the forum state that are directed at the forum[.]"  Schwarzenegger, 374 F.3d

16  at 803.[6]

17  While there is no dispute that Defendants' activities qualify as intentional acts, the

18  Court finds that such conduct fails to satisfy the express aiming requirement.  In

19  Schwarzenegger, California-based actor Arnold Schwarzenegger sued an Ohio car

20  dealership for its unauthorized use of his photographs in its advertisements.  The Ninth

21  Circuit held that the "expressly aimed" requirement was not met because the dealership's

22  advertisements were aimed at Ohio as opposed to California.  Id. at 807.  In particular, the

23  court highlighted the fact that the advertisements were directed at Ohio consumers to

24

---

25  [6] The Ninth Circuit uses "the phrase 'purposeful availment,' in shorthand fashion, to
include both purposeful availment and purposeful direction, … but availment and direction

26  are, in fact, two distinct concepts."  Schwarzenegger, 374 F.3d at 802. "A purposeful
availment analysis is most often used in suits sounding in contract [while] [a] purposeful

27  direction analysis, on the other hand, is most often used in suits sounding in tort."  Id.  In
this case, Plaintiff relies solely on the purposeful direction, not the purposeful availment,

28  test.

encourage them to buy or lease vehicles from the defendant in Ohio.  Id.  The court noted

that while "[i]t may be true that [defendant's] intentional act eventually caused harm to

Schwarzenegger in California, and [defendant] may have known that Schwarzenegger lived

in California," those facts did not confer jurisdiction because defendant's "express aim was

local."  Id.

As in Schwarzenegger, the activities upon which Plaintiff relies to establish personal

jurisdiction were not aimed *at California*.  Rather, Defendants are alleged to have aimed

their activities *at the PTO*, which is located *in Washington D.C.*  Although Plaintiff avers

that Defendants' motivation was to harm it in California, the fact remains that Defendants'

*actions* were *aimed* at Washington D.C.  Id.; see also Love v. Assoc. Newspapers, Ltd., 611

F.3d 601, 609 (9th Cir. 2010) ("Where a defendant's 'express aim was local,' the fact that it

caused harm to the plaintiff in the forum state, even if the defendant knew that the plaintiff

lived in the forum state, is insufficient to satisfy the effects test."); Pebble Beach Co. v.

Caddy, 453 F.3d 1151, 1158 (9th Cir. 2006) (British company's use of "Pebble Beach"

trademark did not constitute "express aiming" at California, despite the defendant's

knowledge that the Pebble Beach resort was in California); Juniper Networks, Inc. v. SSL

Servs., LLC, No. C 08-5758 SBA, 2009 WL 3837266 (N.D. Cal. Nov. 16, 2009)

(defendant's patent enforcement activities, which consisted of filing a patent infringement

lawsuit in Texas against a California-based party, were insufficient to establish specific

jurisdiction in California), aff'd, 2010 WL 5140471 (Fed. Cir. Dec.13, 2010) (unpublished).

Plaintiff cites Bancroft for the proposition that a single act taken outside the forum is

sufficient to establish personal jurisdiction where the defendant knew the effects of such act

would be felt by the plaintiff in the forum.  Pl.'s Opp'n at 18.  In Bancroft, the court found

that a letter sent by the defendant to a domain name registrar located in Virginia

challenging plaintiff's use of a particular domain name "was expressly aimed at California

because it individually targeted [the plaintiff], a California corporation doing business

almost exclusively in California."  223 F.3d at 1088.  The facts underlying Bancroft are

readily distinguishable from those presented in this case.  Here, Plaintiff is neither a

California corporation nor is its business limited to California.  To the contrary, the Complaint alleges that Plaintiff is a *Delaware* corporation and that it markets and sells its motorcycles "in many *foreign* countries[.]"  Compl. ¶¶ 9, 12 (emphasis added).  The effects of Defendants' actions were not limited to California, but potentially included Plaintiff's business worldwide.  Thus, unlike <u>Bancroft</u>, the extra-forum conduct did not individually target Plaintiff in this forum with the intention of disrupting its business in California.

The Seventh Circuit's decision in <u>Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership</u>, 34 F.3d 410 (7th Cir. 1994) also is inapposite.  In that case, the National Football League and the Indianapolis Colts brought a lawsuit for trademark infringement against the Canadian Football League's new team in Baltimore, the Baltimore Colts.  <u>Id.</u> at 411. The only activity the Baltimore team had undertaken or planned in Indiana at that point was the broadcast of its games, which were to be shown nationwide. <u>Id.</u>  Nonetheless, the court concluded that the Indianapolis Colts' trademarks would be impacted in Indiana and therefore jurisdiction was proper under <u>Calder</u>.  <u>Id.</u> at 411-412.  In contrast, the Ninth Circuit has rejected an expansive reading of <u>Calder</u>, noting that <u>Calder</u> "cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific [personal] jurisdiction."  <u>Schwarzenegger</u>, 374 F.3d at 804 (quoting <u>Bancroft</u>, 223 F.3d at 1087).  Rather, this Circuit has required "something more"—namely, a showing that the defendant's conduct was aimed specifically at the forum.  As discussed, that critical element is absent from this case.  Accordingly, the Court finds that the purposeful direction test has not been satisfied.

### 2.    Arising Out Of Forum-Related Activities

Under the second prong of the tripartite test for specific personal jurisdiction, a plaintiff's claim must arise "out of the defendant's forum-related activities."  <u>Panavision Int'l, L.P.</u>, 141 F.3d at 1322.  Plaintiff must show that "but for" the defendant's forum-related conduct, the injury would not have occurred.  <u>Myers v. Bennett Law Offices</u>, 238 F.3d 1068, 1075 (9th Cir. 2001).  Here, there is no forum-related activity at issue.  Rather, the conduct forming the basis of this lawsuit consists of written representations made by

1  Defendants to the PTO.  That conduct took place before and was aimed at the PTO in

2  Washington D.C.  Thus, the Court finds that Plaintiff's injuries did not arise from any

3  forum-related conduct because the conduct at issue took place outside of and is not related

4  to California.

5           **3.       Reasonableness**

6           Where, as here, the plaintiff's showing is insufficient to establish either purposeful

7  availment or that the claims arise from defendant's forum-related activities, "the Court need

8  not reach the third prong of the specific jurisdiction test."  Doe, 248 F.3d at 925.

9  Nevertheless, even if did, the Court is persuaded by Defendants' contention that the

10  assertion of personal jurisdiction would be unreasonable in this case.

11          The reasonableness determination requires consideration of a number of factors:

12  (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden

13  on the defendant in defending in the forum; (3) the extent of the conflict with the

14  sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the

15  dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of

16  the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence

17  of an alternative forum.  Dole, 303 F.3d at 1114.  No single factor is dispositive.  Core-Vent

18  Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1488 (9th Cir. 1993).

19          Considering the above-referenced factors, the Court finds that haling Defendants

20  into a California court is neither reasonable nor fair.  Compelling Defendants to litigate in

21  this forum would be unduly burdensome considering that they are Italian entities which are

22  based in Italy and otherwise have no reason to be in California.  While Defendants may

23  have purposefully availed themselves of the benefits of Washington D.C. through their

24  involvement in proceedings before the PTO, they have not done so with respect to

25  California.  In addition, aside from the fact that Plaintiff, a Delaware corporation, does

26  business here, there is no showing that California has any particular interest in this lawsuit.

27          Without citation to the record or any relevant legal authority, Plaintiff argues that

28  unless its suit is allowed to proceed in this Court, it will be left without a forum to pursue

1  Defendants.   Pl.'s Opp'n at 20-21.  That simply is untrue.  By interjecting themselves into

2  matters before the PTO in Washington D.C., Defendants have voluntarily submitted

3  themselves to the jurisdiction of Washington D.C.  See 15 U.S.C. § 1071 (b)(4) (providing

4  district courts with personal jurisdiction over a foreign defendant which has submitted a

5  trademark application to the PTO).  Indeed, Defendants readily acknowledge as much in

6  their reply.  Defs.' Reply at 13.  The Court therefore finds no merit to Plaintiff's contention

7  that dismissing this action leaves it without an alternative forum.

8  **IV.**   **CONCLUSION**

9      For the reasons stated above,

10      IT IS HEREBY ORDERED THAT:

11      1.    Plaintiff's Motion for Leave to File Amended Complaint is DENIED.

12      2.    Defendants' Motion to Dismiss for Lack of Personal Jurisdiction is

13  GRANTED.

14      3.    The Clerk shall close the file and terminate all pending matters.

15      IT IS SO ORDERED.

16  Dated: July 15, 2011                              _Saundra B Armstrong_____

17                                    SAUNDRA BROWN ARMSTRONG
                                    United States District Judge

18

19

20

21

22

23

24

25

26

27

28